UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| HSC HOLDINGS; fka GE&F CO, LTD, § | | |
| § | | |
| Plaintiff, § | | |
| VS. § | CIVIL ACTION NO. 6-12-18 | |
| § | | |
| CARY E. HUGHES, *et al*, § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

This case represents the latest legal maneuvering in a long-running dispute over control of a corporation that invests in oil and gas projects. In October 2011, after years of litigation between many of these parties in federal court and South Korea, Plaintiff HSC Holdings ("HSC") filed a shareholders' derivative suit in state district court in DeWitt County, Texas. More than four months after the filing of that suit and within three days of a scheduled injunction hearing, Defendant Helia Tec Resources ("Helia Tec") removed the action to federal court. As its basis for removal, Helia Tec contends that this suit implicates an arbitration agreement that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208, requires a federal court to enforce.

The arbitration agreement Helia Tec identifies is included in a 2005 Agreement concerning participation rights in a Papua New Guinea drilling project. But none of the parties in this case signed that agreement, this suit does not involve

the Papua New Guinea project, and no provision in the 2005 Agreement governs the ownership dispute that this case is about.  Therefore, although the Fifth Circuit employs a broad test to determine when a dispute has enough of a connection to a Convention-covered arbitration agreement to warrant federal jurisdiction, the extremely tenuous connection Helia Tec asserts misses even that large target. HSC's motion is therefore **GRANTED** and this case is remanded to the 135th District Court, DeWitt County, Texas.

## I.  FACTUAL BACKGROUND

### A. The Parties

Helia Tec was organized in 2007 as a wholly owned subsidiary of Helia Tec Co., Ltd., which underwent a series of name changes and is now Plaintiff HSC. HSC is a South Korean limited liability company with its principal place of business in Seoul.  The subsidiary Helia Tec is a Texas corporation that develops oil, gas, and renewable energy projects.  Although the parties strenuously dispute whether the individual defendants are still officers of Helia Tec, at one point Defendant Cary Hughes was Helia Tec's principal agent for developing oil and gas interests and Defendant Timothy Gallagher served as chief financial officer.

### B. The 2005 Participation Agreement and Arbitration Clause

In 2005, Pacific LNG Operations, Ltd. obtained an indirect participation interest in an exploration drilling program in Papua New Guinea.  The 2005

Agreement documenting the acquisition of this interest was signed by Pacific LNG, InterOil Corporation, and various other investors, not including Helia Tec, HSC, any of HSC's predecessors, or any of the parties in this case.[1] The 2005 Agreement contains an arbitration clause that reads, in pertinent part:

> On the request of any party hereto, whether made before or after the institution of any legal proceeding, any action, dispute, claim or controversy of any kind now existing or hereafter arising between any of the parties hereto in any way arising out of, pertaining to or in connection with this Agreement (a "*Dispute*") shall be resolved by binding arbitration in accordance with the terms hereof. Any party may, by summary proceedings, bring an action in court to compel arbitration of any Dispute.

*Helia Tec Res., Inc. v. GE & F Co.*, 4:09-CV-01482, Docket Entry No. 28 § 14.10.

### C. The 2007 Agreement Giving Helia Tec An Interest in the Papua New Guinea Project

In 2007, Pacific LNG transferred its interest to Helia Tec through a Project Investment Agreement. In connection with this 2007 Agreement, Hughes, acting on behalf of Helia Tec, signed a Joinder Agreement, binding Helia Tec to the 2005 Agreement "to the same extent as if it was an original party thereto." Joinder Agreement, Docket Entry No. 29-3.

### D. The Purported 2009 Assignment

Between mid-2008 and early 2009, the relationship between HSC, Hughes, and Gallagher soured, resulting in the current management dispute. Plaintiff HSC

---

[1] *See Helia Tec*, 4:09-CV-01482, Docket Entry No. 28, at 55–56 (listing original investors).

contends that Hughes and Gallagher signed a Settlement, Release of Claims, and Indemnity Agreement on March 5, 2009 that ended their relationship with HSC; Hughes and Gallagher maintain that they still have corporate authority. On February 18, 2009, Kwak Bong Seo, purportedly acting as Helia Tec's Director and President, transferred the Indirect Participation Interest back to Pacific LNG.

### E. The Federal Court Lawsuit

Upon learning of this transfer, Hughes, also purportedly acting on behalf of Helia Tec, filed suit in May 2009 in the Southern District of Texas, seeking a declaratory judgment nullifying the assignment of the interest in the Papua New Guinea project and quieting title in favor of Helia Tec, as well as damages for fraud, conspiracy, and conversion. *Helia Tec Res., Inc. v. GE & F Co.*, No. H-09-1482, 2011 WL 4383085, at *2 (S.D. Tex. Sept. 20, 2011). Helia Tec alleged that Seo's 2009 transfer to Pacific LNG was made without Helia Tec's knowledge or authority. *Id.* Judge Harmon dismissed these claims without prejudice because Pacific LNG, previously dismissed from the federal suit for lack of personal jurisdiction, was a required party without whom the case could not proceed. *Id.* at *4–7. Although the case was pending for more than 28 months, Helia Tec never asserted that the arbitration provision in the 2005 Agreement governed the question of whether Seo had authority to execute the 2009 assignment on HSC's behalf.

### F. The DeWitt County Lawsuit

Approximately one month after the federal case was dismissed, HSC filed suit in state court. HSC's petition is a shareholder derivative action asserting fraud and breaches of fiduciary duty by Hughes, Gallagher, and other individuals and entities. The petition does not seek any relief with respect to the Papua New Guinea project. Instead, HSC seeks several declaratory judgments relating to Hughes's and Gallagher's lack of corporate authority and a constructive trust over oil and gas properties in DeWitt and Fort Bend Counties ("the Texas Properties"). The suit names as defendants four entities (Mastodon Operating Company, L.L.C., Mastodon Energy Partners, L.L.C., Mastodon Resources, L.L.C. and Sendex Energy, L.L.C.) that HSC contends are now record owners of royalty interests in the Texas Properties as a result of unlawful transfers from Hughes, Gallagher, and the other individual defendants. Docket Entry No. 1-3 ¶¶ 7–10 , 23.

### G. Removal and Subsequent Transfer to Victoria Division

On February 20, 2012, Helia Tec removed the state court action to the United States District Court, Houston Division. Judge Rosenthal, on HSC's motion, transferred the case to the Victoria Division as "the district and division embracing the place where the action or proceeding is pending." Docket Entry No. 41, at 1–2 (quoting 9 U.S.C. § 205) (emphasis omitted).

## II.  DISCUSSION

The statute allowing removal of cases relating to arbitration agreements that fall under the Convention provides:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205.  For removal to be proper, a defendant must thus show that (1) the arbitration agreement falls under the Convention and (2) the dispute relates to the arbitration agreement.  *QPro Inc. v. RTD Quality Servs. USA, Inc.*, 718 F. Supp. 2d 817, 820 (S.D. Tex. 2010).

### A.  Is There An Agreement That Falls Under the Convention?

An agreement falls under the Convention when (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in a territory that is a signatory to the Convention; (3) the relationship arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.  *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 903 (5th Cir. 2005) (citations omitted).

The 2005 Agreement falls under the Convention and thus satisfies this first requirement of the removal statute.  It contains a written agreement to arbitrate. *See Helia Tec*, 4:09-CV-01482, Docket Entry No. 28, at § 14.10.  The arbitration

clause calls for arbitration to take place in Houston, Texas, and the United States is a signatory to the Convention. *See id.*; 9 U.S.C. § 201. The relationship between the parties to the 2005 Agreement arises from a commercial legal relationship, namely a participation interest in a Papua New Guinea oil and gas development project. Finally, several parties to the 2005 Agreement are not American citizens; for example, signatory Clarion Finanz is a citizen of Switzerland. *See Helia Tec*, 4:09-CV-01482, Docket Entry No. 28, at 55–56 (listing original investors).

### B. Does This Lawsuit Relate To The 2005 Arbitration Agreement?

The Fifth Circuit has adopted a broad definition of the "relates to" requirement: "[W]henever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case, the agreement 'relates to' the plaintiff's suit." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002) (emphasis in original). "As long as the defendant's assertion is not completely absurd or impossible, it is at least conceivable that the arbitration clause will impact the disposition of the case." *Id.* But the "relates to" requirement must mean something. Without a meaningful limit, a defendant could obtain federal jurisdiction anytime it is party to an arbitration agreement falling under the Convention, regardless of whether the arbitration provision has anything to do with the issues raised in the state court lawsuit.

This is a case in which the claimed connection between the arbitration agreement and the lawsuit filed in state court is too remote to support federal jurisdiction.  The 2005 Agreement cannot conceivably relate to the issues HSC raised in the DeWitt County lawsuit. None of the parties to the lawsuit are signatories to the 2005 Agreement.  Helia Tec contends that the arbitration provision in the 2005 Agreement nonetheless binds these parties because of the Joinder Agreement that accompanied Pacific LNG's 2007 transfer of its interest in the Papua New Guinea project.  Yet Helia Tec, which now contends that the 2005 Agreement requires arbitration, spent more than two years in Houston federal court litigating the issue of who controls the Helia Tec interest in the Papua New Guinea project with no mention of what it now claims is a mandatory arbitration provision. *See Helia Tec*, No. H-09-1482, 2011 WL 4383085, at *1 ("Plaintiff Helia Tec sues for a declaratory judgment and damages relating to an allegedly fraudulent conveyance of corporate assets.").  The idea of arbitrating the dispute over the interest in the Papua New Guinea project only dawned on Helia Tec after Judge Harmon ruled that personal jurisdiction did not exist over all the foreign parties involved in the project.

But even if Helia Tec's late revelation that the arbitration provision governs a dispute over the interest in the Papua New Guinea project were correct, the state court lawsuit is not about the Papua New Guinea project.  HSC's allegations focus

on the Texas Properties and the general issue of whether Hughes and Gallagher are still shareholders or officers of Helia Tec. The 24-page state court petition mentions the Papua New Guinea project only once: in a single clause among a broader reference to an employment contract that Hughes allegedly entered into without authorization, which granted him a personal interest in the Papua New Guinea project, among other forms of compensation. *See* Docket Entry No. 1-3 ¶ 23(b). The 2005 Agreement has nothing to do with the dispute over the Texas Properties at issue in this case. Helia Tec does not explain how an arbitration provision that may apply to just one of a company's numerous investments can conceivably govern a dispute over ownership of the entire company. No provision in the 2005 Agreement provides guidance on that internal dispute, and the other parties to the 2005 Agreement have no interest in who controls Helia Tec. Indeed, the arbitration provision applies only to disputes arising "*between* any of the parties," which demonstrates its inapplicability to an internal dispute over general control of a company whose sole connection to the arbitration agreement is its receipt of an assigned interest from one of the original signatories. *See Helia Tec*, 4:09-CV-01482, Docket Entry No. 28 § 14.10 (emphasis added).

## III.   CONCLUSION

For these reasons, there is no logical basis for contending that the arbitration provision in the 2005 Agreement relates to the issues raised in this lawsuit. Helia

Tec fails to clear even the low bar that the Fifth Circuit has set for demonstrating that an arbitration provision covered by the Convention relates to a case removed to federal court.

Plaintiff's Motion to Remand (Docket Entry No. 24) is **GRANTED**. The Motion for Costs (Docket Entry No. 24) is **DENIED**.

**IT IS ORDERED** that this cause is remanded to the 135th District Court, DeWitt County, Texas.

SIGNED this 18th day of September, 2012.

_____
Gregg Costa
United States District Judge